UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the Registered Holders of LSTAR Commercial Mortgage Trust 2014-2, Commercial Mortgage Pass-Through Certificates, Series 2014-2,<br><br>Plaintiff,<br><br>vs.<br><br>JANA RIGSBY, an individual; JOHN DOE, in his capacity as personal representative of the Estate of George E. Hiner, deceased; CLIFFORD HINER, an individual; MELANIE NELSON, SUSAN NAGEL, and MISTY HINER, individually and as Trustees of the George E. Hiner Living Irrevocable Trust, a New Mexico Trust; the UNKNOWN HEIRS AND ASSIGNS of GEORGE E. HINER, deceased; TEEL ROOFING, INC., a New Mexico corporation; PAUL TEEL, an individual d/b/a Teel Roofing; and PASEO VENTURA, LLC, a New Mexico limited liability company,<br><br>Defendants. | Case No. 1:18-cv-00027 |

**COMPLAINT FOR BREACH OF CONTRACT AND FORECLOSURE OF MORTGAGE AND APPLICATION FOR APPOINTMENT OF RECEIVER**

Plaintiff, Wells Fargo Bank, National Association, as Trustee for the Registered Holders of LSTAR Commercial Mortgage Trust 2014-2, Commercial Mortgage Pass-Through Certificates, Series 2014-2, by and through its servicer, Hudson Americas, LP, hereby alleges as follows:

**Jurisdiction and Venue**

1. Plaintiff is a national banking association authorized to conduct business in New Mexico. Plaintiff is the Trustee for the Registered Holders of LSTAR Commercial Mortgage Trust 2014-2, Commercial Mortgage Pass-Through Certificates, Series 2014-2, whose special servicer is Hudson Americas, LP.

QB\153761.00075\50096720.3

2. Defendant Jana Rigsby is, upon information and belief, a resident of Roosevelt County, New Mexico.

3. Defendant John Doe is the personal representative, whether already appointed or pending appointment, of the Estate of George E. Hiner (the "Estate"). Defendant Paseo Ventura, LLC, has filed a Petition in the Probate Court of Roosevelt County, New Mexico, Case No. D-911-PB-2017-00024, seeking formal probate of the *Last Will and Testament of George E. Hiner*, supervised administration of the Estate of George E. Hiner, and appointment of a personal representative, but as of the filing of this Complaint, no personal representative has yet been appointed. As such, Plaintiff has not been able to determine the true identity of John Doe. When a personal representative has been appointed, Plaintiff will amend the caption of this proceeding to include the true identity of John Doe.

4. Defendants Clifford Hiner, Melanie Nelson, Susan Nagel, and Misty Hiner are, upon information and belief, the only living children and presumptive heirs of George E. Hiner ("Decedent"), who died on November 10, 2017.

5. Defendant Clifford Hiner, upon information and belief, is a resident of the state of Colorado.

6. Defendant Melanie Nelson, upon information and belief, is a resident of Lea County, New Mexico.

7. Defendant Susan Nagel, upon information and belief, is a resident of Roosevelt County, New Mexico.

8. Defendant Misty Hiner, upon information and belief, is a resident of Lea County, New Mexico.

9.    Defendants Melanie Nelson, Susan Nagel, and Misty Hiner are, upon information and belief, the Trustees of the George E. Hiner Living Irrevocable Trust, a New Mexico trust (the "Trust").

10.   Defendant Teel Roofing, Inc. is, upon information and belief, a New Mexico corporation that claims an interest in the property that is the subject of this action pursuant to (a) a Mechanic's Lien recorded on September 13, 2016, at Recording No. 20162988 in the Official Records for Roosevelt County, New Mexico (the "Official Records"); and (b) a Mechanic's Lien recorded on September 13, 2016, at Recording No. 20162987 in the Official Records.

11.   Upon information and belief, Defendant Paul Teel is an individual residing in New Mexico. Upon information and belief, Defendant Teel Roofing, Inc. is not in good standing and has had its registration revoked by the New Mexico Secretary of State's Office.  Accordingly, Defendant Paul Teel may assert an interest in the property that is the subject of this action pursuant to the Mechanic's Liens referenced above.

12.   Defendant Paseo Ventura, LLC is, upon information and belief, a New Mexico limited liability company that claims an interest in the property that is the subject of this action pursuant to a Transcript of Judgment that was recorded on July 26, 2017, at Recording No. 20172311 in the Official Records.

13.   The remaining defendants are the unknown heirs and assigns of Decedent, whose identities cannot be reasonably ascertained and who, in their capacities as beneficiaries of the Estate, may claim an interest in the real property that is the subject of this action.

14.   The real and personal property that is the subject of this action consists of nine apartments located at 117, 119, 121, 123, and 125 Utah Drive; 1000, 1001, and 1002 West 18th

Lane; and 1826 South Ave. J, Portales, Roosevelt County, New Mexico, and is more particularly described in **Exhibit A** attached hereto (the "Mortgaged Property").

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

16. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to the claims asserted herein occurred in this judicial district and the Mortgaged Property is located in this judicial district.

## General Allegations

17. On or about December 11, 2007, Decedent executed that certain Promissory Note (the "Note") in favor of Imperial Capital Bank ("Imperial") evidencing the terms and conditions of a commercial loan to Decedent in the principal amount of $350,000.00 (the "Loan"). A true and correct copy of the Note is attached hereto as **Exhibit B**.

18. As security for payment of the Note, Decedent executed that certain Mortgage, Assignment of Rents and Security Agreement (the "Mortgage") dated December 11, 2007, and recorded on December 12, 2007, at Recording No. 142185, Book 179, Page 267 in the Official Records. A true and correct copy of the Mortgage is attached hereto as **Exhibit C**.

19. A UCC-1 Financing Statement ("UCC") naming Decedent as debtor and perfecting the lien on the personal property and fixtures in the Mortgage was recorded on December 20, 2007, at Recording No. 142318, Book 179, Page 928 in the Official Records and filed with the office of the Secretary of State of New Mexico on July 18, 2008 at File No. 20080013904J. A true and correct copy of the UCC is attached hereto as **Exhibit D**.

20. Pursuant to a Warranty Deed dated May 14, 2008, and recorded on May 14, 2008, at Book 185, Page 885 in the Official Records, Decedent transferred the Mortgaged Property to the Trust.

21. On or about October 30, 2013, Decedent and the Trust executed a Loan Assumption Agreement (the "Assumption Agreement"), pursuant to which the Trust agreed to be jointly and severally liable with Decedent under the Note, the Mortgage, and all other documents which evidence or secure the Loan (hereinafter, the "Loan Documents"). A true and correct copy of the Assumption Agreement is attached hereto as **Exhibit E**. Hereinafter, the Decedent and the Trust may be referred to collectively as the "Borrowers."

22. The Loan Documents were assigned by Imperial to Fannie Mae ("Fannie Mae"), a corporation existing under the laws of the United States of America, via (i) that certain Allonge dated June 30, 2008 (the "Imperial Allonge"), (ii) that certain Assignment of Mortgage Loan Documents (the "Imperial Loan Assignment"), and (iii) that certain Assignment of Interest in Mortgage or Deed of Trust dated June 30, 2008, and recorded on July 14, 2008, at Recording No. 144896, Book 188, Page 236 in the Official Records (the "Imperial Security Assignment"). True and correct copies of the Imperial Allonge, the Imperial Loan Assignment, and the Imperial Security Assignment are attached hereto collectively as **Exhibit F**.

23. The Loan Documents were assigned by Fannie Mae to Relius Financial, Inc. ("Relius"), a Delaware corporation, via (i) that certain Allonge to Note dated August 22, 2013 (the "Fannie Mae Allonge"), (ii) that certain Assignment of Loan dated August 22, 2013 (the "Fannie Loan Assignment"), and (iii) that certain Assignment of Security Instrument dated August 20, 2013, and recorded on October 18, 2013, at Recording No. 20133348 in the Official Records (the "Fannie Mae Security Assignment"). True and correct copies of the Fannie Mae Allonge, Fannie

Mae Loan Assignment, and Fannie Mae Security Assignment are attached hereto collectively as **Exhibit G**.

24.     The Loan Documents were assigned by Relius to Relius I, LLC ("Relius I"), a Delaware limited liability company, via (i) that certain Allonge to Promissory Note dated October 8, 2013 (the "<u>Relius Allonge</u>") and (ii) that certain Assignment of Security Instruments dated October 8, 2013, and recorded on October 18, 2013, at Recording No. 20133349 in the Official Records (the "<u>Relius Assignment</u>").  True and correct copies of the Relius Allonge and Relius Assignment are attached hereto collectively as **Exhibit H**.

25.     The Loan Documents were assigned by Relius I to Wells Fargo Bank, National Association, via (i) that certain Allonge to Promissory Note dated as of October 9, 2013 (the "<u>Relius I Allonge</u>"), (ii) that certain Assignment Agreement dated as of October 9, 2013 (the "<u>Relius I Loan Assignment</u>"), and (iii) that certain Assignment of Security Instruments dated as of October 9, 2013, and recorded on June 3, 2014, at Recording No. 20141642 in the Official Records (the "<u>Relius I Security Assignment</u>").  True and correct copies of the Relius I Allonge, Relius I Loan Assignment, and Relius I Security Assignment as attached hereto collectively as **Exhibit I**.

26.     The Loan Documents were assigned by Wells Fargo to Relius I via (i) that certain Allonge dated May 1, 2014 (the "<u>Wells Fargo Allonge</u>"), (ii) that certain Assignment Agreement dated May 1, 2014 (the "<u>Wells Fargo Loan Assignment</u>"), and (iii) that certain Assignment of Mortgage, Assignment of Rents and Security Agreement effective as of May 1, 2014, and recorded on June 3, 2014, at Recording No. 20141643 in the Official Records  (the "<u>Wells Fargo Security Assignment</u>").  True and correct copies of the Wells Fargo Allonge, Wells Fargo Loan Assignment, and Wells Fargo Security Assignment are attached hereto collectively as **Exhibit J**.

27. The Loan Documents were assigned by Relius I to Relius Loan Seller, LLC ("<u>Relius LS</u>"), a Delaware limited liability company, via (i) that certain Allonge dated May 1, 2014 (the "<u>Second Relius I Allonge</u>"), (ii) that certain Assignment Agreement dated May 1, 2014 (<u>the "Second Relius I Loan Assignment</u>"), and (iii) that certain Assignment of Mortgage, Assignment of Rents and Security Agreement effective as of May 1, 2014, and recorded on June 3, 2014, at Recording No. 20141644 in the Official Records (the "<u>Second Relius I Security Assignment</u>"). True and correct copies of the Second Relius I Allonge, Second Relius I Loan Assignment, and Second Relius I Security Assignment are attached hereto collectively as **Exhibit K**.

28. The Loan Documents were assigned by Relius LS to Plaintiff via (i) that certain Allonge dated May 1, 2014 (the "<u>Relius LS Allonge</u>"), (ii) that certain Assignment Agreement dated May 1, 2014 (the <u>Relius LS Loan Assignment</u>"), and (iii) that certain Assignment of Mortgage, Assignment of Rents and Security Agreement effective as of May 1, 2014, and recorded on June 3, 2014, at Recording No. 20141645 in the Official Records (the "<u>Relius LS Security Assignment</u>"). True and correct copies of the Relius LS Allonge, Relius LS Loan Assignment, and Relius LS Security Assignment are attached hereto collectively as **Exhibit L**.

29. Plaintiff is the current owner and holder of the Note.

30. Pursuant to the Loan Documents, the principal amount of $350,000 was loaned to Decedent.

31. The principal amount advanced pursuant to the Note accrued interest at a fixed rate of 7.6% per annum until January 1, 2013. Thereafter, the interest rate was adjustable as set forth in the Note, although upon an Event of Default (as defined in the Mortgage), the interest due under the Note would accrue at the Default Rate (as defined in the Note).

32. The Note requires Borrowers to pay on or before the tenth day following the date such payment was due, then a late fee equal to 10% of such delinquent payment became immediately due and payable without any demand or action by Plaintiff.

33. If any monthly payment becomes past due for thirty (30) or more days or any other event of default occurs, interest due under the Note accrues on the unpaid principal balance from the date of default at a rate equal to the lesser of 18% per annum or the maximum interest rate which may be collected from a borrower under applicable law.

34. Upon the occurrence of an Event of Default (as defined in the Mortgage), the entire unpaid principal balance and all other amounts due under the Loan Documents shall immediately become due and payable at the option of Plaintiff without notice to Borrowers.

35. Plaintiff is entitled to recover all expenses and costs, including fees and out-of-pocket expenses of attorneys, as a result of any default under the Note, in connection with efforts to collect the amounts due under the Note, or to enforce the provisions of any of the Loan Documents.

36. The Mortgage encumbers the Mortgaged Property and secures the debt evidenced by the Note.

37. The Mortgage defines an Event of Default to include (a) any failure by Borrowers to pay or deposit when due any amount required by the Note, and (b) the death of any borrower who is a natural person.

38. The Mortgage includes an assignment of rents. Upon the occurrence of an Event of Default, Plaintiff is entitled to collect, sue for, and compromise rents and to direct each tenant of the Mortgaged Property to pay all rents to, or as directed by, Plaintiff.

8
QB\153761.00075\50096720.3

39. Upon default, the Mortgage permits Plaintiff to enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Plaintiff in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property.  Alternatively, the Mortgage provides that Plaintiff may elect to seek the appointment of a receiver, and Borrowers expressly consent to the appointment of such receiver.

40. The Mortgage also includes an assignment of leases.  Borrowers absolutely and unconditionally assigned and transferred to Plaintiff all of Borrowers' right, title and interest in, to and under the leases, including the right, power and authority to modify, extend or terminate any such lease.

41. The Mortgage provides that Plaintiff may seek full recourse for personal liability against Borrowers for any amounts owing under the Note.

42. Borrowers have defaulted under the Note and Mortgage by failing to pay the monthly payments due for October, November, and December 2017.  Moreover, on information and belief, Decedent passed away in November, 2017.

43. Plaintiff has declared a default under the Note and accelerated the debt owing under the Note.

44. As of December 13, 2017, the amounts owed by Borrowers to Plaintiff in connection with the Loan Documents included the following:

| | |
|---|---:|
| Principal: | $303,802.79 |
| Interest: | $5,625.42 |
| Default Interest: | $3,848.17 |
| Late Charges: | $684.33 |
| Reconveyance/Payoff Fee: | $500.00 |
| Protective Advance – Tax: | $60.18 |
| UCC Filing Fee: | $59.00 |
| Non-Sufficient Funds Fee: | $60.00 |
| **Total Amount Due:** | **$314,639.89** |

Additional interest has accrued and will continue to accrue on the outstanding principal balance at the Default Rate of 18% per annum from December 14, 2017, until the outstanding principal balance has been paid in full.

45. Defendant Jana Rigsby may claim an interest in the Mortgaged Property by virtue of a Transfer on Death Deed executed by Decedent and recorded October 10, 2017, at Recording No. 20172977 in the Official Records, purportedly conveying the Mortgaged Property to her.

46. Defendants Melanie Nelson, Clifford Hiner, Susan Nagel, and Misty Hiner may claim an interest in the Mortgaged Property by virtue of their status as presumptive heirs of Decedent, and by virtue of a Transfer on Death Deed executed by Decedent and recorded June 27, 2007, at Recording No. 139800, Book 171, Page 655 in the Official Records, conveying the Mortgaged Property to said Defendants. Defendants Melanie Nelson, Susan Nagel, and Misty Hiner also may claim an interest in the Mortgaged Property by virtue of their status as trustees of the Trust.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

47. Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs as though fully set forth herein.

48. The Loan Documents are valid and enforceable agreements between Plaintiff and Borrowers.

49. Borrowers breached their obligations under the Loan Documents by failing to make the payments due under the Note for October, November, and December 2017.

50. Plaintiff has been damaged as a result of Borrowers' breach.

51.     Pursuant to the terms of the Loan Documents, Plaintiff is entitled to recover from Borrowers all costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in connection with the enforcement of its rights and remedies under the Loan Documents.

WHEREFORE, Plaintiff prays for Judgment against the Estate and the Trust as follows:

A.     For the principal balance in the amount of $303,802.79;

B.     For accrued interest on the foregoing principal balance in the amount of $9,473.59 as of December 13, 2017, and for accruing interest thereon at the rate of 18% per annum from December 14, 2017, until paid in full;

C.     For late charges in the amount of $500.00;

D.     For miscellaneous fees as of December 13, 2017, in the total amount of $679.18, and for such additional fees as may be incurred through the entry of Judgment;

E.     For Plaintiff's costs and reasonable attorneys' fees incurred herein;

F.     For interest on the foregoing late charges, miscellaneous fees, costs, and attorneys' fees at the highest rate allowed by law from the date of entry of Judgment until paid; and

G.     For such other and further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(Unjust Enrichment)**

52.     Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs as though fully set forth herein.

53.     On information and belief, Defendant Jana Rigsby collected rents from tenants occupying the Mortgaged Property.

54.     Defendant Jana Rigsby was not entitled to receive rents from the tenants.

55.     As a result of Defendant Jana Rigsby's unauthorized receipt of rents, she has been unjustly enriched and Plaintiff has been impoverished in the amount of such rents.

11

56. Plaintiff is entitled to an accounting of all rents received by Defendant Jana Rigsby and to a Judgment against Defendant Jana Rigsby for all amounts received by her.

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Entry of an Order directing Defendant Jana Rigsby to provide an accounting for all rents that she received from the Mortgaged Property;

B. Entry of a Judgment in favor of Plaintiff and against Defendant Jana Rigsby for the amount of rents received by Defendant Jana Rigsby from the Mortgaged Property; and

C. For such other and further relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
(Petition for Appointment of Receiver)

57. Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs as though fully set forth herein.

58. Upon information and belief, Borrowers are party to one or more residential leases of portions of the Mortgaged Property with various tenants.

59. Under the Mortgage, Borrowers transferred all right, title, and interest in the leases to the Mortgaged Property to Plaintiff.

60. Under the Mortgage, Plaintiff is entitled to collect any rents owing under the leases to the Mortgaged Property executed by Borrowers.

61. Under the Mortgage, Plaintiff is entitled to petition the Court for an appointment of a receiver to enter into the Mortgaged Property, perform whatever acts are necessary to maintain the Mortgaged Property, and collect rents owing under the leases to the Mortgaged Property.

62. Under the Mortgage, Borrowers expressly agreed to the appointment of a receiver.

63. On December 8, 2017, Plaintiff sent letters to the occupants at the Mortgaged Property, demanding that the occupants pay rents to Plaintiff.

QB\153761.00075\50096720.3

64. On information and belief, Defendant Jana Rigsby has collected rents from the occupants of the Mortgaged Property and has threatened to evict them if they do not continue to pay rents to her.

65. On information and belief, some or all of the occupants of the Mortgaged Property are at risk of having their utilities shut off if arrangements are not made for payment of the utility bills.

66. Accordingly, pursuant to the terms of the Loan Documents, in order to preserve and protect the Mortgaged Property pending the foreclosure thereof, Plaintiff is entitled to the immediate appointment of a receiver over the Mortgaged Property.

67. Plaintiff nominates Amelia Christensen of HOMESPOT Property Management LLC to be the receiver. Ms. Christensen is willing to serve as receiver and meets the qualifications under NMSA §44-8-6:

 a. HOMESPOT Property Management LLC is a limited liability company in good standing and authorized to do business in New Mexico;

 b. Ms. Christensen and HOMESPOT Property Management LLC are not otherwise disqualified under applicable state or federal law to administer the receivership estate;

 c. Before entering on her duties as receiver, Ms. Christensen will sign and file a consent to act as receiver; and

 d. Upon request and a showing of good cause by an interested party, and if required by the Court, HOMESPOT Property Management LLC will post a bond in an amount ordered by the Court.

WHEREFORE, Plaintiff prays the Court grant the following relief:

  A. Appointment of Amelia Christensen of HOMESPOT Property Management LLC, or a similarly qualified individual, as receiver, without bond; and

  B. Entry of an Order and Decree permitting:

   i. The receiver to enter onto and take possession of the Mortgaged Property during the pendency of this action to take whatever actions are reasonably necessary to ensure maintenance of the Mortgaged Property;

   ii. The receiver to collect whatever rents may be due under various leases to the Mortgaged Property and hold the same for the benefit of Plaintiff during the pendency of this action;

   iii. The receiver to negotiate, terminate, and enter into rental agreements relating to the Mortgaged Property; market the Mortgaged Property for sale; and apply revenues generated by the Mortgaged Property, first to the costs of the receivership and then to the amounts owed to Plaintiff;

   iv. Plaintiff to advance funds to pay the receiver, in which event Plaintiff shall be reimbursed for those advances either from revenues generated by the Mortgaged Property or from the sale of the Mortgaged Property as a cost of sale; and

   v. The receiver to take and perform all actions needed to protect and preserve the Mortgaged Property.

**FOURTH CLAIM FOR RELIEF**
**(Foreclosure of the Mortgage)**

68. Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs as though fully set forth herein.

69. Plaintiff may enforce the Mortgage prior to administration of the Estate. *See* NMSA 1978, § 45-3-104(B) (1975).

70. The Mortgage is prior and paramount to all recorded interests in the Mortgaged Property.

71. The Mortgage and all subordinate interests in the Mortgaged Property should be foreclosed.

72. Due to Borrowers' default under the Note and Mortgage, Plaintiff is entitled to have the Mortgage foreclosed and the Mortgaged Property sold at public auction under the statutes of the State of New Mexico and the rules and practices of this Court. The proceeds from the sale of such Mortgaged Property should be applied to the debt due under the Note, including expenditures Plaintiff has paid, or will pay, including reasonable attorneys' fees and costs.

73. Plaintiff is entitled to the appointment of a Special Master to sell the Mortgaged Property and to distribute proceeds of such sale first to Plaintiff in the amounts due under Note, and the balance, if any, to remaining parties in a manner adjudged by the Court.

74. Upon the Court's approval of the Special Master's report, the purchaser of the Mortgaged Property will be entitled to immediate possession of the Mortgaged Property, and shall be entitled to an order directing the Sheriff of Roosevelt County to place the purchaser in possession of the Mortgaged Property.

75. Plaintiff is entitled to judgment permitting it to bid all or part of its judgment at the foreclosure sale, and to a deficiency judgment against Borrowers if the proceeds of the sale of the Mortgaged Property do not satisfy Plaintiff's judgment.

76. The Court should issue a Writ of Assistance following the foreclosure sale, if necessary, directing the Sheriff of Roosevelt County to use reasonable force to effectuate entry on

the Mortgaged Property and to deliver possession of the Mortgaged Property to the purchaser at sale.

77.    Any lien filed against the Mortgaged Property subsequent to Plaintiff's filing of the Notice of Lis Pendens of this action in the Official Records, and every person whose conveyance or encumbrance was subsequently recorded, filed or docketed, should be forever barred and foreclosed of all right, claim, lien and equity of redemption in the Mortgaged Property or any part thereof.

78.    The Mortgage provides that the redemption period after judicial sale is ONE (1) MONTH in lieu of the statutory period.

WHEREFORE, Plaintiff seeks the following relief:

A.    An *in rem* Judgment in favor of Plaintiff against the Mortgaged Property for the debt outstanding under the Note, a sum equal to $314,639.89 as of December 13, 2017, plus additional sums accrued thereafter, including, but not limited to, interest on the Note, post-judgment interest, insurance premiums, service fees, attorneys' fees, litigation costs, and Plaintiff's other advances made under the terms of the Note for maintenance of the Mortgaged Property;

B.    An *in rem* Order and Decree as follows:

    i.    That the sums prayed for are secured by the Mortgaged Property;

    ii.    That the Mortgage is a valid lien on the Mortgaged Property and on the rents, leases, and profits of the Mortgaged Property;

    iii.    That the Mortgage be declared a paramount and superior lien against the Mortgaged Property;

    iv.    That any right, title, interest of any Defendant in this matter be foreclosed;

v.   That in satisfaction of the sums secured by the Mortgaged Property, the Mortgaged Property be sold free and clear of interests or liens;

vi.  That any lien filed subsequent to Plaintiff's filing of the Notice of Lis Pendens in the Official Records, and every person claiming any interest in the Mortgaged Property after the filing of Plaintiff's Notice of Lis Pendens in the Official Records or whose conveyance or encumbrance was subsequently recorded, filed or docketed and having failed to intervene in this action prior to entry of judgment, shall be bound by such judgment pursuant to NMSA 1978, § 38-1-14 (1965), shall have no interest in the Mortgaged Property or in the proceeds of the foreclosure sale of the Mortgaged Property; and shall be forever barred and foreclosed of all right, claim, lien and equity of redemption in the Mortgaged Property or any part thereof;

vii. That the Mortgage be foreclosed under the Statutes of the State of New Mexico and the rules and practices of this Court;

viii. That a Special Master be appointed by this Court to sell the Mortgaged Property described at public auction to the highest and best bidder for cash;

ix.  That out of the proceeds of the sale the Special Master shall pay the costs, reasonable Special Master's fee, and Receiver fees, in order of priority, and then satisfy the money judgment herein demanded;

x.   That, if it should be determined that the security did not bring in sufficient money to satisfy Plaintiff's money judgment, then, and in that event, the

    Plaintiff shall have judgment against Borrowers for any deficiency that may arise;

 xi. That upon the sale of the Mortgaged Property by the Special Master and delivery of a Special Master's Deed to the purchaser or purchasers, such purchaser(s) shall immediately be entitled to possession of the Mortgaged Property, subject only to the right of redemption for a period of one (1) month by Borrowers as provided in the Mortgage and the junior lienholders, if any, as allowed by law;

 xii. That a Writ of Assistance should be issued following the foreclosure sale, if necessary, directing the Sheriff of Roosevelt County, New Mexico to use reasonable force to effect entry on the Mortgaged Property and to deliver possession of the Mortgaged Property to the purchaser(s) at sale; and

 xiii. That any personal property which remains on the Mortgaged Property after the Special Master's sale be deemed to be abandoned and may be disposed of by the purchaser in any manner.

C. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 9th day of January, 2018.

        QUARLES & BRADY LLP
        One Renaissance Square
        Two North Central Avenue
        Phoenix, Arizona 85004-2391
        *Attorneys for Plaintiff*

        By */s/ Eric B. Johnson*
          Eric B. Johnson (#23170)

18

## VERIFICATION

SUMMER TREJO, being first duly sworn according to law, on oath, deposes and says: that she is a Senior Vice President of Hudson Americas L.P., which is the Special Servicer for the Plaintiff in this action, and, as such, is authorized to make this Verification on the Plaintiff's behalf; and that she has read the foregoing Complaint and knows the contents thereof, and that the allegations therein contained are true in substance and in fact, except those made on information and belief, which she believes to be true.

DATED this 9th day of January, 2018.

_____
SUMMER TREJO

STATE OF TEXAS      )
                                    )ss.
County of Dallas         )

On this 9th day of January, 2018, before me personally appeared SUMMER TREJO, a Senior Vice President for Hudson Americas, L.P., a Delaware limited partnership, solely in authorized capacity as Special Servicer for Wells Fargo Bank, National Association, as Trustee for the Registered Holders of LSTAR Commercial Mortgage Trust 2014-2, Commercial Mortgage Pass-Through Certificates, Series 2014-2, known to me or proved to me on the basis of satisfactory evidence to be the person who executed the foregoing instrument, and she thereupon duly acknowledged to me that she executed the same to be her free act and deed.

WITNESS my hand and official seal.

_____
Notary Public

My commission expires:

10-14-2020



PATRICE A BRADSHAW
Notary Public, State of Texas
Comm. Expires 10-14-2020
Notary ID 1028667